**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SILVERSTRAND INVESTMENTS, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMAG PHARMACEUTICALS, INC., DR. BRIAN J.G. PEREIRA and DAVID A. ARKOWITZ,<br><br>Defendants. | No. 10-cv-10470-NMG |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY SILVERSTRAND INVESTMENTS, SAFRON CAPITAL CORPORATION, AND BRIARWOOD INVESTMENTS, INC. FOR APPOINTMENT AS LEAD PLAINTIFF AND SELECTION OF LEAD COUNSEL**

# TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES . . . . . . . . . . ii

I. PRELIMINARY STATEMENT . . . . . . . . . . 1

II. FACTUAL BACKGROUND . . . . . . . . . . 2

III. ARGUMENT . . . . . . . . . . 5

A. THE SECURITIES ACT PROVIDES THAT A LEAD PLAINTIFF BE APPOINTED FOR CLAIMS BROUGHT AS A CLASS ACTION . . . . . . . . . . 5

B. THE AMAG INVESTOR GROUP SHOULD BE APPOINTED THE LEAD PLAINTIFF FOR THE CLASS . . . . . . . . . . 6

1. The AMAG Investor Group Has Filed a Lead Plaintiff Motion . . . . . . . . 7

2. The AMAG Investor Group Has the Requisite Financial Interest in the Relief Sought by the Class . . . . . . . . . . 7

3. The AMAG Investor Group Otherwise Satisfies Rule 23 . . . . . . . . . . 8

C. The Court Should Approve the AMAG Investor Group's Choice of Counsel . . 10

CONCLUSION . . . . . . . . . . 11

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Andrews v. Bechtel Power Corp.*,
780 F.2d 124 (1st Cir. 1985) . . . . . . . . . 9

*Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*,
No. 07-10528 (RWS) (S.D.N.Y. Aug. 11, 2008) . . . . . . . . . 10

*De La Fuente v. Stokely-Van Camp, Inc.*,
713 F.2d 225 (7th Cir. 1983) . . . . . . . . . 9

*Greebel v. FTP Software, Inc.*,
939 F. Supp. 57 (D. Mass. 1996) . . . . . . . . . 5

*In re Drexel Burnham Lambert Group, Inc.*,
960 F.2d 285 (2d Cir. 1992) . . . . . . . . . 8

*In re Sonus Networks, Inc. Sec. Ltig.*,
247 F.R.D. 244 (D. Mass. 2007) . . . . . . . . . 9

*State Univ. Ret. Sys. v. Sonus Networks, Inc.*,
C.A. No. 06-10040-MLW, 2006 U.S. Dist. LEXIS 93328 (D. Mass. 2006) . . . . . . . . . 10

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
216 F.R.D. 248 (S.D.N.Y. 2003) . . . . . . . . . 8

**STATUTES AND RULES**

15 U.S.C. § 77k . . . . . . . . . 8

15 U.S.C. § 77z-1(a)(3)(A)(i) . . . . . . . . . 5

15 U.S.C. § 77z-1(a)(3)(B) . . . . . . . . . 6

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa) . . . . . . . . . 7

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb) . . . . . . . . . 7

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc) . . . . . . . . . 8

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15 U.S.C. § 77z-1(a)(3)(B)(v) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Silverstrand Investments, Safron Capital Corporation, and Briarwood Investments, Inc. (collectively, the "AMAG Investor Group") respectfully submits this Memorandum of Law in support of their motion to: (i) appoint the AMAG Investor Group as Lead Plaintiff; (ii) approve the AMAG Investor Group's selection of the law firm of Abraham, Fruchter & Twersky, LLP to serve as Lead Counsel; (iii) approve the AMAG Investor Group's selection of the law firm of Pyle Rome Ehrenberg PC as Liaison Counsel; and (iv) grant such other and further relief as the court may deem just and proper.

## I. PRELIMINARY STATEMENT

This action was commenced as a securities class action on behalf of all those who purchased shares of AMAG Pharmaceuticals, Inc. ("AMAG" or "Company") pursuant to the Company's secondary offering on or about January 21, 2010 (the "Offering") against AMAG, Dr. Brian J.G. Pereira, the Chief Executive Officer of AMAG and Executive Director of AMAG at all relevant times, and David A. Arkowitz, the Executive Vice President and Chief Financial Officer of AMAG at all relevant times (collectively, the "Defendants"). This action asserts claims that Defendants made materially false and misleading statements in the Offering documents, in direct violation of Section 11 of the Securities Act of 1933 (15 U.S.C. §77k).

This Motion is made on the grounds that the AMAG Investor Group is the most adequate Plaintiff, as defined by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), because, to the best of its knowledge, it has the largest financial interest of any moving class member or plaintiff who also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* Chen Decl. at Ex. C.[1] The AMAG Investor Group has collectively suffered

---

[1] References to the "Chen Decl., Ex. __" are to the exhibits attached to the Declaration of Arthur J. Chen in Support of the Motion by the AMAG Investment Group for Appointment as

losses of $8,504.50 in connection with its purchases of AMAG shares during the Class Period. *See* Chen Decl., Ex. B, C. Furthermore, the AMAG Investor Group adequately satisfies the requirements of Fed. R. Civ. P. Rule 23 in that its claims are typical of the claims of the putative class and that it also will fairly and adequately represent the interests of the class. In addition, the AMAG Investor Group has selected law firms with substantial experience in prosecuting securities class actions to serve as lead counsel and liaison counsel for the class. More importantly, to this day, Plaintiffs are the only shareholders who have filed a class action lawsuit with these allegations against the Company.

## II. FACTUAL BACKGROUND

AMAG describes itself as a biopharmaceutical company that utilizes proprietary technology for the development and commercialization of a therapeutic iron compound to treat anemia and novel imaging agents to aid in the diagnosis of cancer and cardiovascular disease. AMAG currently manufactures and sells two approved products, Ferahame (ferumoxytol) Injection for intravenous use, and GastroMARK. According to the Company's Securities and Exchange Commission (the "SEC") filings, AMAG's "ability to generate future revenues is solely dependent on [their] successful commercialization and development of Feraheme."

On January 21, 2010, AMAG completed the sale of 3,600,000 shares of common stock in their Offering upon filing with the SEC a Form S-3/ASR Registration Statement (the "Registration Statement"), as well as a prospectus supplement (the "Prospectus"). The Prospectus portrayed the Company's technology in highly positive terms, discussed the

---

Lead Plaintiff, and Selection of Lead and Liaison Counsel, dated May 18, 2010 and filed concurrently herewith.

Company's Feraheme product for use in patients with chronic kidney disease, and purportedly warned the public about ***potential*** risk factors, such as the "development of anticipated adverse reactions to Feraheme resulting in safety concerns among prescribers" and safety or drug interaction problems that "could arise with respect to Feraheme even after FDA approval, resulting in recalls, restrictions in Feraheme's label, or withdrawal of Feraheme from the market." However, no mention was made at any time that there were any ***known*** adverse reactions to patients treated with Feraheme in any of AMAG's public statements or SEC filings, including the Prospectus.

On February 4, 2010, Carol Werther, a Summer Street analyst, downgraded AMAG from buy to neutral. In a note to clients, the analyst disclosed to the public that they were aware of several patients hospitalized due to adverse reactions to Feraheme, and were aware of one death that was possibly directly related to Ferahame." These existing adverse reactions to patients treated with Feraheme were disclosed for the first time to the public. On this news, shares of AMAG dropped by over $7.00 per share, more than 15%, to close at $38.12 per share, on heavy volume. A report by Carol Werther issued on February 8, 2010 further questioned the Company's calculated rate of the reported rate of adverse effects.

The statements made in the Registration Statement and Prospectus were materially false or misleading because the Company only mentioned the potential risks of unknown drug safety issues and failed to disclose the known serious adverse reactions suffered by patients treated with Feraheme that required hospitalization. Defendants engaged in a fraudulent scheme by hiding from the public these known adverse events related to Feraheme, which created a facade of extensive earnings and revenue for the Company. The Company failed to disclose that AMAG's

earnings and revenues were unsustainable due to the nature of their fraudulent source and that, as a result, the Company's earnings and revenues would eventually fall.

In the months leading up to the Offering, AMAG also disclosed favorable earnings and revenues, reporting $3 million in third quarter sales in November 2009, and on January 10, 2010, announcing fourth quarter revenues of between $12 and $13 million. The Prospectus had made positive statements regarding Feraheme's revenue generation, stating higher earnings during the fourth quarter of 2009, and discussed the positive effects on revenues in the months going forward due to the launch of their rebate program.

During the Company's March 1, 2010 conference call, management disclosed that demand for Feraheme in December 2009 was at 9,500 grams due to the rebate program. The Company also disclosed that in January 2010, demand dropped to 5,300 grams, and anticipated demand of 6,500 grams of Feraheme in February 2010. In a reaction to the disclosures made in the March 1, 2010 conference call, AMAG's stock price declined over 10%, or $4.02 per share, to close at $34.17, from the previous day's closing price of $38.19.

The statements made in the Registration Statement and Prospectus were materially false and misleading because they failed to disclose that the effect of the rebate program was to front load sales into the fourth quarter, causing sales to drop off after the Offering was complete. As a result of these material omissions regarding AMAG's unsustainable business practice, the investing public could not and did not understand or assess the extent to which AMAG's ongoing operations, reported revenue, earnings and net income were dependent upon the defendants' scheme. The Company's false and misleading statements: (i) deceived the investing public regarding AMAG's business, operations, management, prospects, and the intrinsic value of

AMAG securities; and (ii) caused the plaintiff and members of the Class to purchase AMAG securities at artificially inflated prices.

## III. ARGUMENT

### A. THE SECURITIES ACT PROVIDES THAT A LEAD PLAINTIFF BE APPOINTED FOR CLAIMS BROUGHT AS A CLASS ACTION

On December 22, 1995, Congress amended the Securities Act of 1933 (the "Securities Act") by enacting the PSLRA. Specifically, Section 27(a)(3)(A)(i) of the Securities Act provides that, within 20 days after the date on which a class action is filed,

> the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class -- (I) of the pendency of action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 77z-1(a)(3)(A)(i).

On March 19, 2010, a notice was published by Abraham, Fruchter & Twersky, LLP on *Marketwire* concerning the filing of *Silverstrand Investments v. AMAG Pharmaceuticals, Inc., et. al.*, No. 10-cv-10470-NMG (D. Mass.). *See* Chen Decl., Ex. A. The notice advised members of the purported class of the pendency of the action, the claims asserted, the purported class period and that anyone who wished to serve as lead plaintiff needed to make a motion to the Court no later than 60 days from the date of the notice. As a result, the notice satisfied all the requirements of the PSLRA. *See generally Greebel v. FTP Software, Inc.*, 939 F. Supp. 57 (D. Mass. 1996).

Section 27(a)(3)(B) of the Exchange Act directs the Court to consider any motions by purported class members to serve as lead plaintiffs in response to any such notice by the later of

(i) 90 days after the date of publication, or (ii) as soon as practicable after the court decides any pending motion to consolidate any actions asserting substantially the same claim or claims, and to presume that the "most adequate plaintiff" to serve as Lead Plaintiff is the person or group of persons who:

> (aa) has either filed the complaint or made a motion in the response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B).

That presumption may be rebutted where the otherwise presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interests of the class; and
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

The PSLRA also provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 77z-1(a)(3)(B)(v).

### B. THE AMAG INVESTOR GROUP SHOULD BE APPOINTED THE LEAD PLAINTIFF FOR THE CLASS

The AMAG Investor Group satisfies the prerequisites for appointment as lead plaintiff. The AMAG Investor Group has the largest recoverable loss of any member or group of members

who have filed a complaint or expressed a desire to serve as lead plaintiff. In addition, there are no deficiencies in the AMAG Investor Group's adequacy which would cause it to be an inappropriate choice to serve as Lead Plaintiff.

**1. The AMAG Investor Group Has Filed A Lead Plaintiff Motion**

The first requirement to being appointed a lead plaintiff is to have "either filed the complaint or made a motion in response to a notice . . . ." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa). Here, the AMAG Investor Group is making such a motion, and by this motion the AMAG Investor Group satisfies the first prong of the most adequate plaintiff test. Also, to this day, the AMAG Investor Group is the only shareholder to have filed a complaint against the Company with these claims.

**2. The AMAG Investor Group Has The Requisite Financial Interest In The Relief Sought By The Class**

The second prerequisite to being appointed a lead plaintiff is that "in the determination of the Court, [the plaintiff] has the largest financial interest in the relief sought by the Class" of those persons moving to be appointed lead plaintiff. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb). The AMAG Investor Group purchased a total of 730 shares of AMAG stock during the Class Period and incurred total losses of $8,504.50 (*see* Chen Decl., Exs. B, C).[2] The AMAG Investor

[2] The members of AMAG Investor Group still hold all shares they purchased pursuant to the Offering. The value of their shares are calculated according to the closing price on March 18, 2010, the date the complaint was filed. The AMAG Investor Group has losses of $8,504.50. *See* Chen Decl., Ex. C.

Group believes this amount to be the largest financial interest in the recovery sought in this action and, accordingly, it is presumed to be the most adequate lead plaintiff and should be appointed as Lead Plaintiff. *See* 15 U.S.C. § 77z-1(a)(3).

### 3. The AMAG Investor Group Otherwise Satisfies Rule 23

The lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous the joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See, e.g.*, *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) (citation omitted). As detailed below, the AMAG Investor Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists if claims "arise[] from the same course of events" and are

based on the same legal theories as to all class members. *See*, *e.g.*, *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992), *cert. dismissed sub nom.*, 506 U.S. 1088 (1993). However, the claims of the class representative need not be identical to the claims of the class to satisfy typicality. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (typicality satisfied despite factual distinctions between claims of named plaintiffs and class members).

The AMAG Investor Group satisfies this requirement because, just like all other members of the Class, it purchased shares of the Company's stock pursuant to the Offering, in reliance on the allegedly material false and misleading statements and suffered losses when the truth was revealed. Thus, the AMAG Investor Group's claims are typical of those of other Class members because its claims and the claims of other Class members arise out of the same course of events.

Rule 23(a)(4) provides that the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of plaintiff to represent the class to the existence of any conflicts between the interests of the proposed lead plaintiff and the members of the Class. In this Circuit, adequacy depends on: (1) whether the named Plaintiff and his counsel have any conflicts of interest with other class members; and (2) whether the lead plaintiff's counsel is qualified, experienced and able to prosecute the action vigorously on behalf of the class. *In re Sonus Networks, Inc. Sec. Litig.*, 247 F.R.D. 244, 249 (D. Mass. 2007) (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

Here, the AMAG Investor Group has no conflicts with the interests of the Class. It wants to obtain the maximum recovery for the Class so as to maximize its pro rata share of that

recovery. The AMAG Investor Group and its counsel have already demonstrated that they will prosecute the claims of the Class vigorously by having executed certifications, acted to file this motion and seeking to assert claims on behalf of the Class.

In addition, as shown below, the AMAG Investor Group's proposed counsel are highly qualified, experienced and able to conduct this complex litigation vigorously and in a professional manner. Thus, the AMAG Investor Group satisfies the adequacy requirements of Rule 23.

Accordingly, the AMAG Investor Group satisfies the requirements of Section 27(a)(3)(B) and is presumptively the most adequate plaintiff. Unless this presumption is rebutted, it must be appointed lead plaintiff. *See State Univ. Ret. Sys.*, 2006 U.S. Dist. LEXIS 93328, at *8.

### C. THE COURT SHOULD APPROVE THE AMAG INVESTOR GROUP'S CHOICE OF COUNSEL

The Securities Act provides that the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class. *See* 15 U.S.C. § 77z-1(a)(3)(B)(v). In that regard, the AMAG Investor Group has selected and retained Abraham, Fruchter & Twersky, LLP to serve as Lead Counsel. Abraham, Fruchter & Twersky, LLP has the commitment and ability to accomplish the required tasks since it has extensive experience and is highly competent in prosecuting similar actions. *Accord, e.g.*, *Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*, No. 07-10528 (RWS), Dkt. No. 15 at 8 (S.D.N.Y. Aug. 11, 2008) (appointing Abraham, Fruchter & Twersky, LLP as co-lead counsel). Firm biographies for proposed lead and liaison counsel are submitted for the Court's convenience. *See* Chen Decl., Ex. D, E.

## CONCLUSION

In light of the foregoing, the AMAG Investor Group respectfully requests that the Court: (i) appoint the AMAG Investor Group as Lead Plaintiff; (ii) approve the AMAG Investor Group's selection of the law firm of Abraham, Fruchter & Twersky, LLP to serve as Lead Counsel; (iii) approve the AMAG Investor Group's selection of the law firm of Pyle Rome Ehrenberg PC as Liaison Counsel; and (iv) grant such other and further relief as the Court may deem just and proper.

Dated: May 18, 2010

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

By /s/ Mitchell M.Z. Twersky
Mitchell M.Z. Twerksy

Mitchell M.Z. Twersky
Ximena R. Skovron
Arthur J. Chen
One Penn Plaza, Suite 2805
New York, New York 10119
(212) 279-5050
(212) 279-3655 (fax)

**Proposed Lead Counsel for Plaintiffs**

**PYLE ROME EHRENBERG PC**
Betsy Ehrenberg
18 Tremont Street, Suite 500
Boston, MA 02108
617-367-7200
617-367-4820 (fax)

**Proposed Liaison Counsel for Plaintiffs**