UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SILVERSTRAND INVESTMENTS, SAFRON CAPITAL CORPORATION AND BRIARWOOD INVESTMENTS, INC., On Behalf of Themselves And All Others Similarly Situated, <br><br>                   Plaintiffs, <br><br>     v. <br><br> AMAG PHARMACEUTICALS, INC., DR. BRIAN J.G. PEREIRA, DAVID A. ARKOWITZ, JOSEPH V. BONVENTRE, M.D., MICHAEL NARACHI, ROBERT J. PEREZ, LESLEY RUSSELL, M.D., DAVEY S. SCOON, RON ZWANZIGER, MORGAN STANLEY CO. INCORPORATED, J.P. MORGAN SECURITIES INC., GOLDMAN, SACHS CO., LEERINK SWANN LLC, ROBERT W. BAIRD CO. INCORPORATED, and CANACCORD GENUITY INC., <br><br>                   Defendants. | C.A. No.  10-CV-10470-NMG |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

I.      INTRODUCTION .................................................................................................1

II.     BACKGROUND OF THE ACTION ....................................................................2

III.    FINAL CERTIFICATION OF THE PROPOSED CLASS
        IS APPROPRIATE ...............................................................................................4

IV.     THE CLASS RECEIVED ADQUATE NOTICE...................................................5

V.      THE COURT SHOULD GRANT FINAL APPROVAL OF
        THE SETTLEMENT .............................................................................................6

        A.      The Settlement Before The Court ............................................................6

        B.      The Standards For Judicial Approval Of Class
                Action Settlements ....................................................................................7

        C.      The Settlement Satisfies The Criteria For Approval................................9

                1.      The Complexity, Expense, And Likely Duration Of
                        The Litigation..................................................................................9

                2.      The Reaction Of The Class To The Settlement .............................10

                3.      Stage Of Proceedings And Sufficient Investigation
                        Conducted .....................................................................................10

                4.      The Risk Of Establishing Liability And Damages ......................12

                5.      Maintaining The Class Action Throughout Trial.........................13

                6.      The Ability Of Defendants To Withstand A Greater
                        Judgment.......................................................................................13

                7.      The Settlement Offers A Meaningful Benefit To The
                        Class..............................................................................................14

VI.     THE PLAN OF ALLOCATION OF SETTLEMENT
        PROCEEDS IS FAIR AND REASONABLE AND
        SHOULD ALSO BE APPROVED.......................................................................15

VII.    CONCLUSION....................................................................................................17

## TABLE OF AUTHORITIES

**Case**                                                                                    **Page(s)**

*Berger v. Compaq Computer Corp.*,
    257 F.3d 475 (5th Cir. 2001) ........................................................................................13

*Bussie v. Allmerica Fin. Corp.*,
    50 F. Supp. 2d 59 (D. Mass. 1999) ...............................................................................10

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981)...........................................................................................................8

*Chatelain v. Prudential-Bache Sec.*,
    805 F. Supp. 209 (S.D.N.Y. 1992)................................................................................13

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)............................................................................................8

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ...............................................................................14

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...............................................................................9, 10, 13

*In re Chicken Antitrust Litig.*,
    810 F.2d 1017 (11th Cir. 1987) ....................................................................................15

*In re Flag Telecom Holdings*,
    2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 8, 2010)...............................................9

*In re Lupron(R) Mktg. & Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005)...........................................................................6, 8, 10

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) ....................................................................................12

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) ....................................................................................12

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) ...........................................................................16

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................14, 15, 16

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)..........................................................................................10

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) ...................................................................................7

*In re StockerYale, Inc. Sec. Litig.*,
    2007 U.S. Dist. LEXIS 94004 (D.N.H. Dec. 18, 2007) ..........................7, 9, 10, 12, 13, 14

*In re Telectronics Pacing Sys.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ..............................................................7

*In re Veeco Instruments Sec. Litig.*,
    2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7, 2007) ....................................14

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ..............................................................12, 13, 14

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..............................................................16

*Lewis v. Newman*,
    59 F.R.D 525 (S.D.N.Y. 1973) ......................................................................12

*Mullane v. Central Bank & Trust Co.*,
    339 U.S. 306 (1950) ........................................................................................5

*Maywalt v. Parker & Parsley Petroleum Co.*,
    1997 U.S. Dist. LEXIS 97 (S.D.N.Y. Jan. 9, 1997) ........................................16

*Rolland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000) ......................................................................7, 8

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
    2001 U.S. Dist. LEXIS 13115 (S.D. Ind. Aug. 28, 2001) ..................................5

*White v. National Football League*,
    822 F. Supp. 1389 (D. Minn. 1993) ..............................................................16

*Whitford v. First Nationwide Bank*,
    147 F.R.D. 135 (W.D. Ky. 1992) ....................................................................8

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910) ........................................................................................7

*Zerkle v. Cleveland-Cliffs Iron Co.*,
    52 F.R.D. 151 (S.D.N.Y. 1971) ....................................................................12

## Statutes, Rules and Regulations

Fed. R. Civ. P. 23 ................................................................................... *passim*

I.      **INTRODUCTION**

Lead Plaintiffs Silverstrand Investments, Safron Capital Corporation, and Briarwood Investments, Inc. ("Lead Plaintiffs") respectfully submit this Memorandum of Law in Support Of Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds.   Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs respectfully request an order granting final approval of: (i) the proposed Settlement of this securities class action (the "Action" or "Litigation") on behalf of a Class consisting of all Persons who purchased AMAG Common Stock pursuant and/or traceable to the January 21, 2010 Offering; and (ii) the Plan of Allocation of settlement proceeds which will govern how the Net Settlement Fund will be allocated among Class Members.   Pursuant to the Stipulation of Settlement, dated September 12, 2014 (the "Stipulation"), the parties and their counsel have agreed to a settlement of the Litigation for the sum of $3,750,000 in cash (the "Settlement Fund" or "Gross Settlement Fund").   The Settlement resolves all claims asserted by Lead Plaintiffs and the Class in the Litigation against Defendants.[1]

As discussed below, and in the accompanying Declaration of Ian D. Berg in Support of Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds; and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses (the "Berg Decl."), the Court should grant final approval of the Settlement.   The Settlement is fair, reasonable, and adequate, and a very good result for the Class under the circumstances.   The Settlement was reached only after Lead Plaintiffs' and Lead Counsel's extensive and comprehensive prosecution efforts including, *inter alia*:  a thorough investigation and drafting of

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.  Submitted herewith, and as Exhibit B and C to the Stipulation, are the Settling Parties' agreed-upon form of the proposed Final Order Approving The Settlement And Order Of Dismissal With Prejudice; and the proposed Final Judgment.

the original complaint and the consolidated amended complaints; extensive motion practice, including extensive briefing and oral argument before the First Circuit Court of Appeals; and, extensive arm's-length settlement negotiations and mediation.  The fairness of the Settlement is particularly apparent when evaluated in light of the remaining factual and legal difficulties that Lead Plaintiffs would have to overcome at trial to prove Defendants' liability and recoverable damages suffered by the Class.

Lead Plaintiffs also request that the Court approve the Plan of Allocation of settlement proceeds, which is set forth in the Notice distributed to the Settlement Class.  This plan will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to valid claimants.  The plan was devised with the assistance of Lead Plaintiffs' damages expert and was designed to ensure an equitable distribution of the Settlement Fund to the members of the Class.  The plan is fair, reasonable, and adequate and should be approved.

## II.      <u>BACKGROUND OF THE ACTION</u>

On March 18, 2010, this Action was filed by Lead Plaintiffs in the United States District Court for the District of Massachusetts (the "Court").  Lead Plaintiffs brought this Action on behalf of themselves and all purchasers of the common stock of AMAG pursuant and/or traceable to AMAG's Registration Statement filed with the SEC, No. 333-164400, dated January 19, 2010, and the accompanying Prospectus dated January 21, 2010, issued in connection with the secondary offering conducted by AMAG on or about January 21, 2010 (the "Offering").  The original complaint alleged that Defendants AMAG, Dr. Brian J.G. Pereira ("Periera"), and David A. Arkowitz ("Arkowitz") violated Section 11 of the Securities Act of 1933 (the "Securities Act") by failing to disclose material information pertaining to a pharmaceutical drug, *Feraheme*, which was developed and commercialized by AMAG.

2

On July 27, 2010, the Court appointed Plaintiffs Silverstrand Investments, Safron Capital Corporation, and Briarwood Investments, Inc. as Lead Plaintiffs and approved the selection of the law firm of Abraham, Fruchter & Twersky, LLP as Lead Counsel, and the law firm of Pyle Rome Ehrenberg PC as Liaison Counsel.   On September 15, 2010, Lead Plaintiffs filed an Amended Class Action Complaint, naming as additional AMAG Defendants Dr. Joseph V. Bonventre, Michael Narachi, Robert J. Perez, Lesley Russell, M.D., Davey S. Scoon, and Ron Zwanziger, and the Underwriter Defendants, and asserting two new causes of action under Sections 12 and 15 of the Securities Act.

On December 1, 2010, Lead Plaintiffs moved, with Defendants' consent, for leave to file a Second Amended Complaint for the purpose of adding allegations related to the Food and Drug Administration's October 18, 2010 Warning Letter to AMAG.   The Court granted Lead Plaintiffs leave to amend on December 14, 2010, and on December 17, 2010, Lead Plaintiffs filed a Second Amended Class Action Complaint (the "SAC").   The SAC alleges violations of:   (1) Section 11 of the Securities Act (against all Defendants); (2) Section 12(a)(2) of the Securities Act (against AMAG, Pereira, Arkowitz, and the Underwriter Defendants); and (3) Section 15 of the Securities Act (against Pereira and Arkowitz).

On February 23, 2011, the AMAG Defendants and Underwriter Defendants filed motions to dismiss the SAC, which Lead Plaintiffs opposed.   On August 11, 2011, the Court entered a Memorandum and Order granting Defendants' motions to dismiss the SAC.   Lead Plaintiffs filed an appeal with the First Circuit Court of Appeals.   On February 4, 2013, the First Circuit issued an opinion affirming in part, and reversing in part, the Court's dismissal of the SAC and remanding to the Court for further proceedings.   Defendants petitioned the United States Supreme Court for a writ of certiorari on June 13, 2013, which Lead Plaintiffs opposed.   The

petition was denied on October 7, 2013.   On November 6, 2013, Defendants filed renewed

motions to dismiss the SAC, which Lead Plaintiffs opposed.   On April 7, 2014, the Court entered

a Memorandum and Order denying Defendants' motions to dismiss.   On May 19, 2014,

Defendants filed Answers to the SAC.

On August 5, 2013, the Parties commenced mediation with an agreed JAMS mediator.

On May 27, 2014, the Parties reached an agreement-in-principle to settle the case pursuant to the

mediator's proposal.   Subsequently, the Parties continued negotiations resulting in the terms and

conditions set forth in the Stipulation.   On June 9, 2014, the Court issued an Order granting the

Parties' joint motion to stay the Action in light of their agreement-in-principle to settle the

matter.

On September 12, 2014, the Parties executed the Stipulation and Lead Plaintiffs moved

for preliminary approval of the Settlement.   The Court entered the Order Preliminarily

Approving Settlement and Providing for Notice on October 2, 2014.

## III.   <u>FINAL CERTIFICATION OF THE PROPOSED CLASS IS APPROPRIATE</u>

In presenting the Settlement to the Court for preliminary approval, Lead Plaintiffs

requested that the Court preliminarily certify the Class so that notice of the proposed Settlement

could be issued, which the Court approved in its Order Preliminarily Approving Settlement and

Providing for Notice (Dkt. 154).   Nothing has changed to alter the propriety of the Court's

certification and, for all of the reasons stated in Lead Plaintiffs' Memorandum of Law In Support

Of Lead Plaintiffs' Motion For Preliminary Approval Of Settlement (Dkt. 150), incorporated

herein by reference, Lead Plaintiffs now request that the Court grant final certification of the

Class for purposes of carrying out the Settlement pursuant to Federal Rules of Civil Procedure

23(a) and (b)(3), appoint Lead Plaintiffs as Class Representatives, and appoint Lead Counsel as Class Counsel.

## IV.    THE CLASS RECEIVED ADQUATE NOTICE

Lead Plaintiffs respectfully submit that the Settlement Class has received adequate notice of the terms of the Settlement.   Submitted concurrently herewith as Exhibit 1 to the Berg Declaration is the Declaration of Charles E. Ferrara, the Director of Operations for the Angeion Group ("Angeion Decl."), the appointed Claims Administrator for the Settlement.   Pursuant to the Court's Preliminary Approval Order, a Notice of Proposed Settlement of Class Action (the "Notice") was mailed to 7,256 Potential Class Members and nominees.   Angeion Decl. at ¶6. Additionally, the Summary Notice was published in *The Investor's Business Daily* and *PR Newswire*.  *Id.* at ¶7.   The Settlement Notice and Claim Forms, along with other key settlement documents, are also available on a website created for this settlement.  *Id.* at ¶8.

This method of giving notice, previously approved by the Court, is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]."   Fed. R. Civ. P. 23(e)(1); *see Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (A notice of settlement satisfies due process when it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").   Moreover, the law requires "'adequate notice,' not perfect notice."   *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 2001 U.S. Dist. LEXIS 13115, at *63 (S.D. Ind. Aug. 28, 2001).

The Notice, in plain easily understood language, advises the Class Members of the essential terms of the Settlement, sets forth the procedure and deadline for submitting Claim Forms, objections and requests for exclusion to the Settlement, who to contact for additional information, and provides specifics regarding the date, time, and place of the Settlement Hearing.

The Notice also contains information regarding Lead Plaintiffs' Counsel's attorneys' fee and expense application, Lead Plaintiffs' expense application and the Plan of Allocation. Thus, the Notice provides the necessary information for Class Members to make an informed decision regarding the Settlement and their rights with respect to it.

The time to file objections or exclusions from the Settlement expires on January 9, 2015. To date, no requests for exclusion and no objections to any aspect of the settlement, the Plan of Allocation, or Lead Counsels' request for attorneys' fees and expenses have been received. (Berg Decl., ¶42; Angeion Decl., ¶9). The overwhelming acceptance of the settlement by the Class fully supports a finding that the Settlement and the Plan of Allocation are fair, reasonable, and adequate with respect to the Class and should be approved.[2]

Lead Plaintiffs respectfully submit that the notice program implemented in the Litigation constitutes the best notice practicable under the circumstances and satisfies the requirements of due process and Federal Rule of Civil Procedure 23. *See, e.g., In re Lupron(R) Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 96 (D. Mass. 2005) (although direct mail was not used, a notice plan which included nationwide publication, posting of court-approved notices on website, and method for class members to have questions answered satisfied the requirements of Rule 23 and due process).

## V.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.    The Settlement Before The Court

In complete settlement of the Litigation, Defendants agreed to pay $3,750,000 in cash, which was deposited in an escrow account pursuant to the terms of the Stipulation. The settlement proceeds will be distributed to Class Members pursuant to the Plan of Allocation, as

---

[2] The deadline for exclusions and objections is January 9, 2015. Lead Plaintiffs will address any and all objections and/or exclusions in their reply papers due on or before January 23, 2015.

set forth in the Notice, after payment of settlement administration costs, attorneys' fees and expenses awarded by the Court, and time and expenses awarded to Lead Plaintiffs.

**B.**    **The Standards For Judicial Approval Of Class Action Settlements**

It is well settled that compromises of disputed claims are favored by the courts. *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement."). This is particularly true in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of prolonged litigation. *See Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When comparing 'the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation,' there are clearly strong arguments for approving a settlement.") (citation omitted).

Pursuant to Rule 23(e), a court should approve a class action settlement if it is fair, adequate and reasonable, and in the best interest of the class. *See, e.g., In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77 (D. Mass. 2005); *In re StockerYale, Inc. Sec. Litig.,* 2007 U.S. Dist. LEXIS 94004, at *11 (D.N.H. Dec. 18, 2007).

In determining whether a proposed settlement is fair, adequate and reasonable, the First Circuit has not established a formal protocol, but the district courts therein routinely rely on the *Grinnell* factors which are as follows: "'(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement

fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.'"  *Lupron*, 228 F.R.D. at 93-94 (quoting *Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974)).

Courts have emphasized that these factors should not be applied in a "formalistic" fashion.  *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992) ("A class action settlement cannot be measured precisely against any particular set of factors."). Moreover, courts have consistently held that the function of a judge in reviewing a settlement is not to rewrite the settlement agreement reached by the parties or to try the case by resolving issues intentionally left unresolved.  *See, e.g., Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n.14 (1981) ("Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.  They do not decide the merits of the case or resolve unsettled legal questions." (citation omitted)).

When examined under the applicable criteria, the Settlement is a very good result for the Class.  Although Lead Plaintiffs believe in the merits of their case, they recognize that they would face substantial obstacles in establishing liability and damages should this case proceed to trial.  Furthermore, even if this case were to proceed to trial, Defendants could appeal any judgment favorable to the Class, putting at risk, or otherwise delaying, any recovery to Class Members.  *See Rolland*, 191 F.R.D. at 10 ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."). The Settlement achieves a substantial and certain recovery for Class Members and is unquestionably superior to the distinct possibility that were the Litigation to proceed to trial,

there could be no recovery at all.  Analysis of the relevant factors demonstrates that the proposed

Settlement warrants the Court's approval.

### C.    The Settlement Satisfies The Criteria For Approval

#### 1.    The Complexity, Expense, And Likely Duration Of The Litigation

"'[I]n evaluating the settlement of a securities class action, federal courts . . . have long

recognized that such litigation is notably difficult and notoriously uncertain.'"  *In re Flag*

*Telecom Holdings*, 2010 U.S. Dist. LEXIS 119702, at *43 (S.D.N.Y. Nov. 8, 2010) (citations

omitted).  Here, Lead Plaintiffs litigated this case for over four years, and the securities claims

advanced by the Lead Plaintiffs involved numerous complex legal and factual issues.  The

complexity of the allegations is evidenced by the Court's initial dismissal of the case with

prejudice at the motion to dismiss stage.  As a result, Lead Plaintiffs appealed the Court' decision

and embarked on a lengthy and time-consuming appeals process before the First Circuit, and

petition to the Supreme Court of the United States.  Ultimately, the case was remanded before

this Court, and Defendants' second attempt to dismiss the complaint was denied.  However,

overcoming the motion to dismiss stage in no way guaranteed Lead Plaintiffs' success in proving

the allegations at trial, or at summary judgment.

This factor also "'captures the probable costs, in both time and money, of continued

litigation.'"  *StockerYale*, 2007 U.S. Dist. LEXIS 94004, at *8 (quoting *In re Cendant Corp.*

*Litig.*, 264 F.3d 201, 231 (3d Cir. 2001)).  Here, this factor strongly supports the fairness of the

Settlement, because had the parties not reached an agreement to settle they would have faced

continued expensive litigation, including a complicated, lengthy trial, followed by appeals; the

outcome of which were uncertain.  Continued litigation would have caused Class Members who

suffered economic losses many years before to wait years longer for a resolution of their claims. In a class action of this sort, the time and expense leading up to trial would have been significant.

The Settlement, for $3,750,000, at this juncture, results in an immediate and substantial tangible recovery, without the considerable risk, expense, and delay of continued discovery, trial preparation, summary judgment, trial and appeals. Therefore, Lead Plaintiffs submit that the Court should find that this factor weighs in favor of the proposed Settlement.

### 2. The Reaction Of The Class To The Settlement

This factor "'attempts to gauge whether members of the class support the settlement.'" *StockerYale*, 2007 U.S. Dist. LEXIS 94004, at *9 (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998)). While it is significant that Lead Plaintiffs fully support the Settlement, this factor can be analyzed only by comparing the number of objectors and opt-outs with the number of claimants. *Lupron*, 228 F.R.D. at 96. Reaction to a settlement is considered positive when the number of objectors is minimal compared with the number of claimants. *See id.* A small percentage of objections and opt-outs constitutes strong evidence that a settlement is fair and reasonable. *See Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999). Here, as of December 23, 2014, Lead Plaintiffs have received no objections to, and no requests to be excluded from, the proposed Settlement. (Berg Decl. ¶42; Angeion Decl. ¶9). Thus, this factor currently weighs in favor of settlement approval.

### 3. Stage Of Proceedings And Sufficient Investigation Conducted

This factor "'captures the degree of case development that class counsel [had] accomplished prior to settlement.'" *StockerYale*, 2007 U.S. Dist. LEXIS 94004, at *9 (quoting *Cendant*, 264 F.3d at 235). This case was in litigation for approximately four years before Settlement was reached. Lead Counsel and Lead Plaintiffs were well-informed about the

strengths and weaknesses of their case at the time of settlement due to the fact that significant legal rulings, investigations, and exchange of mediation briefs had occurred.  Lead Counsel's independent investigation into the facts and merits of the claims – in addition to the proceedings before this Court and the appeals process – informed Lead Counsel and Lead Plaintiffs about the strengths and weaknesses of the Action and further informed them concerning whether the Settlement was appropriate.  In connection with the filing of the complaints, Lead Plaintiffs undertook a significant, continuing investigation.  This investigation included a review of publicly available information concerning the Defendants and the claims asserted, including newspaper articles, online publications, SEC filings and relevant information from the United States Food and Drug Administration's Adverse Event Reporting System provided to Lead Plaintiffs pursuant to a request under the Freedom of Information Act.  This investigation informed the Settlement negotiations.  Lead Counsel also gained a well-developed understanding of the parties' positions and the strengths and weaknesses of the Action as a result of the decisions of the Court of Appeals.  Lead Plaintiffs appealed this Court's order dismissing the Action, and the Court of Appeals allowed certain of Lead Plaintiffs' claims to proceed.  The Court of Appeal's decision definitively determined the scope of the Action, as well as informed the parties as to the strengths and weaknesses of the case.

Given this extensive information, developed and gathered during the four years that this Action has been pending, Lead Plaintiffs and their counsel were able to fully evaluate the merits of the claims and the risks of continued litigation, and make an intelligent judgment about settlement.  Thus, this factor weighs strongly in favor of the fairness and reasonableness of the Settlement.

11

### 4.     The Risk Of Establishing Liability And Damages

This factor "'survey[s] the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement.'" *StockerYale*, 2007 U.S. Dist. LEXIS 94004, at *9-10 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)).

There were substantial risks here with respect to Lead Plaintiffs' ability to sustain the Action, prove that Defendants had made material misstatements or omissions, and establish damages.   Continuing with the case could have resulted in loss at trial or on appeal.   The two sides vigorously disagree on both liability and the amount of money that could have been won if Lead Plaintiffs prevailed at trial.   Indeed, Defendants were expected to advance, primarily through expert testimony, a "negative causation" argument – *i.e.*, that any losses suffered by Lead Plaintiffs were caused by external factors unrelated to Defendants' alleged misrepresentations or omissions.   Negative causation is a statutory defense in §11 cases. Defendants would have likely asserted that negative causation would dramatically reduce or eliminate recoverable damages.

In addition to the parties' disagreement to the amount of alleged damages, if any, that could be recovered at trial, the parties disagree about, *inter alia*: (1) the extent that various facts alleged by the Lead Plaintiffs were materially false and misleading; and (2) whether the facts alleged were material, false, misleading or otherwise actionable under the securities laws.   In the face of these significant risks, the Class obtained a meaningful all-cash settlement, providing support for the fairness of the Settlement.   *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52

F.R.D. 151, 159 (S.D.N.Y. 1971) ("Stockholder litigation is notably difficult and unpredictable.").

### 5.      Maintaining The Class Action Throughout Trial

This factor "'measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial'" because "'the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class action].'" *StockerYale*, 2007 U.S. Dist. LEXIS 94004, at *10 (quoting *Warfarin*, 391 F.3d at 537). Although at the time of Settlement no class certification had occurred in the Litigation yet, Lead Plaintiffs maintain that, for the reasons set forth in Lead Plaintiffs' Preliminary Approval Motion, the Class would be certified. However, Lead Plaintiffs and Lead Counsel understood there was no guarantee that the Court would certify a class; and, even further, no guarantee that the class would be maintained throughout trial, as courts may always exercise their discretion to re-evaluate the appropriateness of class certification at any time. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."); *see also Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001) (decertifying class, finding proposed class representatives did not sufficiently remain apprised of status and claims of litigation). The Settlement avoids that real risk and any uncertainty with respect to this issue. Thus, the difficulties in maintaining this putative class, as currently defined, weighs in favor of settlement.

### 6.      The Ability Of Defendants To Withstand A Greater Judgment

This factor considers "'whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement.'" *StockerYale*, 2007 U.S. Dist. LEXIS 94004, at *11 (quoting *Cendant*, 264 F.3d at 240). Lead Counsel is unaware of any evidence which suggests

Defendants would be unable to pay a larger judgment.  However, to avoid further protracted and expensive litigation and in order to limit substantial risks that could terminate the Litigation in Defendants' favor, it is desirable and beneficial to the Class that the Litigation be settled now on the terms agreed to in the Settlement.

### 7.       The Settlement Offers A Meaningful Benefit To The Class

This factor "'evaluate[s] whether the settlement represents a good value for a weak case or poor value for a strong case.'"  *StockerYale*, 2007 U.S. Dist. LEXIS 94004, at *11 (quoting *Warfarin*, 391 F.3d at 538).  The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  "[T]he Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion."  *In re Veeco Instruments Sec. Litig.*, 2007 U.S. Dist. LEXIS 85629, at *33 (S.D.N.Y. Nov. 7, 2007).  The court need only determine whether the settlement falls within a "'range of reasonableness.'"  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), aff'd, 117 F.3d 721 (2d Cir. 1997).

The $3,750,000 settlement amount is well within the common recovery range for class actions of this sort.  The Settlement provides Settlement Class Members with approximately 10% of the estimated best possible result (assuming a complete victory, including overcoming negative causation arguments and other affirmative defenses limiting damages) or approximately 25% of a more conservative damages estimate (taking into Defendants' negative causation arguments).  Setting aside the fact that actual provable damages could end up to be a fraction of

14

Lead Plaintiffs' damage analysis had the case moved forward through trial, the average recoveries in securities class actions are approximately 3% of possible damages. *See Ellen M. Ryan & Laura E. Simmons, Securities Class Action Settlements: 2010 Review and Analysis*, at 7 (2012) (available at http://securities.stanford.edu/Settlements/REVIEW_1995-2010/Settlements_ Through_ 12_ 2010.pdf) (securities class action settlements from 1996 through 2010 recovered a median of 3.3% of plaintiffs' estimated damages); *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) (noting that the average recovery in securities class actions is less than 3% of possible damages). Thus, the Settlement is well within the range of reasonableness necessary to approve a class action settlement.

When measured against the results in comparable cases, and taking into account the serious disputes between the parties as to falsity, materiality, causation, and damages, Lead Plaintiffs' Counsel achieved a good recovery for Class Members. Additionally, the Class is receiving a complete cash settlement that equates to a true benefit for the Class at relatively little expense. Thus, this factor supports the fairness of the Settlement.

Accordingly, pursuant to Rule 23(e), the Court should approve this class action Settlement as fair, adequate, reasonable, and in the best interest of the Class.

## VI.   THE PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS IS FAIR AND REASONABLE AND SHOULD ALSO BE APPROVED

The Notice contains the Plan of Allocation detailing how the settlement proceeds are to be divided among eligible Class Members. A trial court has broad discretion in approving a plan of allocation. *See In re Chicken Antitrust Litig.*, 810 F.2d 1017, 1019 (11th Cir. 1987). The test is simply whether the proposed plan, like the settlement itself, is fair, reasonable and adequate. *See PaineWebber*, 171 F.R.D. at 132. In determining whether a proposed plan of allocation is fair, courts look primarily to the opinion of counsel. *See id.* at 133 ("[T]he adequacy of an

allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information."). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citation omitted); *see also White v. National Football League*, 822 F. Supp. 1389, 1420 (D. Minn. 1993) (stating "[t]he court . . . affords considerable weight to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved" in approving distribution of settlement proceeds).

Here, the Plan of Allocation of settlement proceeds, developed by Lead Counsel with the assistance of Lead Plaintiffs' damages expert,  reflects Lead Plaintiffs' damage theory of the case in a simple and straightforward manner and will result in a fair distribution of the available proceeds among Class Members.  Generally, the Plan of Allocation provides that Class Members will receive a portion of the Net Settlement Fund based on the percentage of that Class Member's investment or economic loss, as defined in the Notice.   When all claims are considered, the Plan of Allocation awards a *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim taking into account several factors including the timing of the purchases and sales of the AMAG shares.  *See* Berg Decl. ¶¶43-47. This simple formula and *pro rata* distribution are fair and reasonable.   *See, e.g., In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 669 (E.D. Va. 2001) (concluding "the plan of allocation, as a general matter, fairly treats class members by awarding a *pro rata* share to every Authorized Claimant").

Courts also consider the reaction of a class to a plan of allocation.  *See PaineWebber*, 171 F.R.D. at 126; *Maywalt v. Parker & Parsley Petroleum Co*., 1997 U.S. Dist. LEXIS 97, at *11-

16

*12 (S.D.N.Y. Jan. 9, 1997) (plan of allocation approved as fair and equitable where no objections received), *aff'd sub nom. Olick v. Parker & Parsley Petroleum Co*., 145 F.3d 513 (2d Cir. 1998).  The Notice described the proposed Plan of Allocation of settlement proceeds in detail and indicated that the deadline for objecting to the Plan of Allocation is January 9, 2015. To date, no objections to the Plan of Allocation have been received.  Accordingly, since the Plan of Allocation is fair, reasonable and adequate, is recommended by experienced and competent counsel, and is not opposed by its beneficiaries, it should be approved.

**VII.   CONCLUSION**

For the foregoing reasons, the proposed Settlement and Plan of Allocation warrant the Court's final approval.  Lead Plaintiffs respectfully request this Court enter the Settling Parties' agreed upon Final Approval Order (Exhibit B to the Stipulation) and Final Judgment (Exhibit C to the Stipulation); and the proposed Order approving the Plan of Allocation, submitted herewith.

Dated: December 23, 2014                    Respectfully submitted,

                                            ABRAHAM, FRUCHTER
                                              & TWERSKY, LLP

                                            /s/      *Ian D. Berg*

                                            Ian D. Berg (admitted *pro hac vice*)
                                            Takeo A. Kellar (admitted *pro hac vice*)
                                            12526 High Bluff Drive, Suite 300
                                            San Diego, CA 92130
                                            Tel: (858)792-3448
                                            Fax: (858)792-3449
                                            *iberg@aftlaw.com*
                                            *tkellar@aftlaw.com*

                                               -and-

                                            Jack G. Fruchter (admitted *pro hac vice*)
                                            Mitchell M.Z. Twersky (admitted *pro hac vice*)
                                            Mark S. Hamill (admitted *pro hac vice*)
                                            One Penn Plaza, Suite 2805

New York, New York 10119
Tel: (212) 279-5050
Fax: (212) 279-3655
*jfruchter@aftlaw.com*
*mtwersky@aftlaw.com*
*mhamill@aftlaw.com*

*Lead Counsel and Attorneys for Lead Plaintiffs*
*Silverstrand Investments, Safron Capital*
*Corporation and Briarwood Investments, Inc.*


PYLE, ROME, EHRENBERG PC
Betsy L. Ehrenberg (BBO #554628)
2 Liberty Square, 10th Floor
Boston, MA 02109
Tel: 617.367.7200
Fax: 617.367.4820
*behrenberg@pylerome.com*

*Liaison Counsel for Lead Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Ian D. Berg, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 23, 2014.

/s/ *Ian D. Berg*
Ian D. Berg